C. F. CONKLIN, *et al.*, v. SCHOOL DISTRICT No. 37, *etc.*

REPAIRS *of School House; Liability of District.* A school district is bound by the contract of its board for *repairs* of its school house, and that notwithstanding that at the annual meeting a given sum was voted for certain specified repairs, and such sum had already been expended in such repairs.

*Error from Lyon District Court.*

AT the September Term, 1878, of the district court, *School District No. 37*, Lyon county, as defendant, recovered a judgment against *C. F. Conklin* and *J. G. Ames*, partners as Conklin & Ames, as plaintiffs, who bring the case here on error. The facts are stated in the opinion.

*Buck & Kellogg*, for plaintiffs in error:

This case involves the construction of chapter 122, Laws of 1876. Section 11, p. 248 of said chapter, does not pro-

vide for nor specify all things necessary to be done in conducting and administering the business of a school district. Hence some things must be left in the hands of the district board, for they "have the *care* and *keeping* of the school house and other property belonging to the district," (§ 22,) and "provide the necessary appendages for the school house during the time school is taught therein," (§ 25,) and "furnish each teacher with a suitable daily register," &c. (§ 27.) The law contemplates that the district may incur debts and be sued, and that a judgment may be rendered against it. (§ 31.)

Under said § 22, the district board had ample authority to make the $5 contract with the plaintiffs in error, to do certain work and repairs on the school house. Because to "have the care and keeping of the school house and other property belonging to the district," means, to give it attention; to have charge or oversight, implying responsibility for safety; to have concern; to cause to remain in a given situation or condition; to remain unchanged; to hold or preserve; to have in custody; to take care of; to preserve from damage, harm, or loss; to guard; to conduct; to manage; to maintain; to support; to be solicitous; to heed; to protect. (Webster's Dict.)

We think it is not law that a district board can make no repairs unless there are funds on hand, or unless a specific levy be made or a vote be had. If this be the law, then in a district having no fund on hand and before the time for the annual vote for repairs, if a pane of glass be broken from a school-house window, or a panel broken out of or a lock from the door, or a desk be broken, or a broom lost, or a joint of stove-pipe removed, the district board would be powerless, and the children and teacher be imperiled in comfort or health, or the school cease for the remainder of that year. It is no answer to this to say that if by reason of a storm or accident, or by reason of a miscalculation on the part of the voters, the fund for repairs should be exhausted before the end of the year, a special meeting could be called

and another fund be voted, as intimated by the court at the time of making out and deciding upon the instructions which were given, for the reason that such vote for raising money for repairs can only be had *once* each year. (Sec. 11, fifth clause, Laws 1876, p. 248.)

If the district board have absolutely no power to make necessary repairs after the fund voted under said fifth clause of § 11 of the school law is exhausted, and the people have no power to call a special meeting and vote more funds until the following August, what way is there out of the dilemma in which this school district was placed in October, with a school house ready for use, excepting $5 worth of repairs, and the school for the year not yet begun? Under the court's 4th and 6th instructions the educational work of the district must be suspended for the entire school year, and the law intrusting the "care and keeping" of the school house to the board, would have no meaning.

*Sterry & Sedgwick,* for defendant in error:

The first point we make as to the $5 claim is this: That no matter how erroneous the rulings of the court below were on the trial of the cause, as to the plaintiffs, such errors, if committed, were errors without prejudice, even to the rendition of a judgment for costs against them. The testimony of the plaintiffs themselves, that the work was done under a contract made with the treasurer of the school district, in the absence of the other members of the board, without any evidence showing or tending to show that the school-district board, as a board, ever authorized the making of the contract, is sufficient to negative the right of the plaintiffs to recover. It is no answer to this proposition to say that we are concluded upon this point by the findings of the jury that said contract was with the board as a board while it was in session. These findings are in direct conflict with all the evidence in the case, and hence must be disregarded. If there was any evidence even tending to show such fact, our proposition would not be tenable, but as there is not, it is incontrovertible. If we are correct, it follows that the plain-

tiffs were never employed to do the work, and consequently have no right to recover therefor. (*Steinbeck v. Treasurer of Liberty Township*, 22 Ohio St. 144; *School District v. Stough*, 4 Neb. 357; id. 254; 16 Kas. 302.)

If, however, we are wrong in the above position, and the court will say that the record shows a contract to have been made by the district board, then we say that the board had no power to make such a contract under the facts shown. While school districts are *quasi* corporations, yet only a few of their corporate powers are vested in the district boards. They have power to act in but two or three cases, except where expressly authorized by the voters of the district assembled. The following we believe are the only provisions of law in relation to the powers of such boards: Sections 21 to 29 inclusive, and §§ 30, 31 and 33 of art. 4, ch. 122, and § 1, ch. 126, Laws of 1876. The most of the power of a school district is vested in the district meetings. (Laws 1876, ch. 122, art. 3, § 11.) The district board is simply a special committee, appointed to carry out the will of the meeting. By the fifth subdivision of said § 11, the power to vote a tax for repairs is expressly conferred upon the meeting, and hence, to find out how much tax would be needed, it necessarily follows that the meeting, and not the board, should determine the amount of repairs to be made. In the case at bar, the district, at its annual meeting, considered the question of repairs, and certain repairs were ordered to be made, and a tax levied therefor; and such repairs were made, and the taxes so levied expended in payment for such repairs, and the repairs made by plaintiff were not included therein. We think that the district meeting had the right to determine just what repairs should be made, and that the board had no right to make any other, especially as there were no funds to pay for them. For a very full and able discussion of this whole question, we refer the court to the leading American case upon this matter: *Harris v. School District*, 8 Foster (N. H.), 58, 61; also, 32 N. H. 118; 10 Foster, 305; 11 Foster, 304; 31 Ga. 225; 4 Neb. 254, 357.

The opinion of the court was delivered by

BREWER, J.: The question in this case is as to the powers of the district board of a school district in reference to repairs on a school house. The repairs consisted in fixing a door and window, and painting over some obscene writing on the wall, and the contract price therefor was five dollars. The contention of the defendant is, that the district board is limited to the amount of money voted for repairs at the school meeting, and to the kind of repairs specified in such vote, and the testimony shows that the board had already exhausted the moneys voted for the repairs specified. Hence it claims that the powers of the board were exhausted, and the contract not binding on the district. The statute provides (Laws 1876, p. 248, § 11) that the school meeting shall have power—"*Fifth,* To vote a tax annually, not exceeding one per cent. on the taxable property in the district, as the meeting shall deem sufficient, to purchase or lease a site, . . . and to build, hire or purchase such school house, and to keep in repair and furnish the same with the necessary fuel and appendages." And (p. 253, § 22) that "the district board shall have the care and keeping of the school house and other property belonging to the district;" and (page 254, § 25) that "the district board shall provide the necessary appendages for the school house during the time a school is taught therein, and shall keep an accurate account of all expenses thus incurred, and present the same for allowance at any regular district meeting."

These two sections impose a duty as well as grant a power. "Shall have the care and keeping of the school house," not merely authorizes but requires the board to preserve and care for the school house. And this duty is not like that of a janitor, one of personal attention and manual labor, but like that of trustees, one of supervision. They are not personally to sweep and dust and clean, or bring wood and make fires, but to see that it is done, and to that end may employ assistants, and bind the district for their pay. They are not

chosen because of their physical strength and dexterity, but because of their good sense and intelligence. And "care and keeping," when used in connection with a trust like this, imply the right to preserve the building in the condition in which it is placed in their custody, to make good the waste and injury to which all buildings, and especially public buildings like a school house, are subject; in other words, to repair. It may not imply the right to remodel or improve, but it implies the right to do all that may come fairly and strictly within the term "repair." They are to "keep" the school house, and to keep it in good order and repair. If a pane of glass be broken, they may employ a glazier to put in a new one. If the door be off the hinges, they may employ a carpenter to fix it. If some miscreant has defiled the walls with obscene writing, they may employ one to remove the writing or repaint the wall. And in this they are but performing the duty cast upon them of the "care and keeping" of the school house, and are creating a liability against the district, and not upon themselves personally. We do not think that the board can be considered as simply a special committee to expend certain moneys placed in their hands, and with no power beyond. The district is a corporation, (Laws of 1876, p. 245, § 2,) with the "usual powers of a corporation for public purposes," and the board is its managing authority. True, its powers are few and limited, but still reasonable construction must be given to the powers which are granted. And where a duty is imposed, especially one so vital as this to the well-being of the district, it will be understood that it is to be performed in the ordinary manner, and by the ordinary means. It will be noticed by § 21, p. 253, that when the board builds, hires or purchases a school house, it is expressly stated that it shall be done "out of the funds provided for that purpose," but no such limitation is expressed when the duty is cast of the care and keeping of the school house. The reason is obvious. In mere matter of repairs and preservation, there is little room for expenditure; in building, hiring or purchasing, there may be

great extravagance. Again, it is in the very nature of repairs, that they cannot be foreseen, and the necessary amount determined in advance. Who can tell when, and to what extent, just such injuries as appear in this case will occur? Discretion as to these matters must be vested somewhere, and nowhere more appropriately than in the district board. And so we understand the legislature has provided.

The judgment will be reversed, and the case remanded for a new trial.

All the Justices concurring.